The next case on for argument is In Re. Petrobras Securities. Mr. Fuhrman, good morning. Good morning, Your Honors. My name is Joshua Fuhrman, and I'm really here on my own behalf concerning the sanctions order that was entered against me by the district court. I get it. It's the order, the existence of the order, not the sanctions that you're worried about because the sanctions are not ever going to be paid. The monetary sanctions were waived by class counsel. That is not the issue at this point in time. The issue at this point in time is the language used by the district court, the findings made by the district court, and the lack of substantiation for those findings. There are two, the order is both procedurally and substantively flawed. Is that moot, even though you didn't pay, I guess not, all right then. Well, I don't think it's moot. The money is not the only issue. This court has recognized when a, particularly an inherent or 1927 sanctions order was entered against a counsel, there are other implications, implications with licensure, subsequent implications with other actions. Certainly, as this order stands, should I ever appear again as subject or counsel for a client, half that client would be significantly diminished. At this stage, I'm not sure that I would, to be frank. In order to be able to represent other clients effectively, I think an order that says what Judge Rakoff said about me should be looked at closely, and I should at least take this opportunity to ask your honors to reverse it. Procedurally, the flaws were simply that neither the authority nor the facts in the conduct for which sanctions were issued were cited in the motion itself. That has to be specifically set forth in the instrument giving notice of the motion. The authority for sanctions under the court's inherent power was never mentioned in the motion. It was also mentioned in a footnote. Compare that with the table of contents for the motion, where there's a whole section about Rule 11, which was completely improper in the first place, and we actually asked for sanctions against class counsel on the Rule 11 request, which, of course, denied, and under Section 1927. The inherent authority argument never made its way into a brief, into the body of a brief, until the reply was filed by class counsel. But then, of course, the court relied on its inherent power in granting sanctions here. Also absent from ... I think that's not something that counsel could have weighed, the use of the inherent power. I mean, normally, you're right. We don't ever, you know, district courts, no courts, hear things that are raised for the first time in a reply. I think when you're talking about the inherent power of the court, that's not something that's weighed because it's not brought up earlier. It's not a waiver issue, Your Honor, but it is a notice issue. Even if the court were to pursue sanctions pursuant to its inherent power, the attorney to be sanctioned is still entitled to notice of both the fact that the inherent authority will be the source of the sanction power and the specific conduct. The purpose of the notice, presumably, was so that you could deal with it at a hearing. But you didn't ask for a hearing. Well, Your Honor, if the court wanted to rely on something other than notice, I think a hearing could have been possible. I don't think it's on the attorney to be sanctioned to try and cure the other side's violation of the notice provision or, frankly, that attorney's due process rights. Being able to, and this court has also been clear that in a clear, where the notice has been provided adequately, there is no specific entitlement to a hearing. The problem in this specific sanctions motion is that neither the evidence, nor the facts, nor the authority was in the actual notice. So a hearing, yeah, would have gone at least some measure of rectifying that issue because the facts, authority, and evidence raised for the first time in the reply brief could have been addressed at a hearing. And my opportunity to address that is what the mandatory notice provision is about. So, but it has to be noticed. There is no certify procedure or anything else that would apply in a sanctions motion because it has to be in the instrument providing notice. The court's determination in its analysis itself was an abuse of discretion, even putting these procedural issues aside. The court, in fact, did collapse the bad faith and meritlessness elements into a single element, which this court warned against in the 2015 Chang case. Only made a finding that there was meritlessness in the argument. Did not make a finding on specific evidence of bad faith. And also, the court's determination that the Cypre argument in particular was meritless is something I struggle with. And the reason is that the class counsel and the defendants both found that there was merit to this argument. Did they find it was merit or did they decide to throw in the sponge rather than fight about it and have further delay in the distribution of several billion dollars? If that was their intention, then I would have assumed that the initial stipulations that they had first proposed, which include dealing with these motions, dealing with the bond motion, and dealing with the sanctions motion, would be included in that stipulation. Didn't they ask you where you would want the overage to go? And you didn't propose anything. I mean, if Mr. Bueno cared about it, you would assume that he would say, well, it ought to go to this group or that group. I don't think it's an objector's role to fix a bad settlement. I think it's an objector's role to say, look, frankly, Mr. Bueno's position was he didn't want there to be any Cypre. But if there was going to be a Cypre, it certainly shouldn't go to a Brazilian company. Couldn't the issue have been raised as in when it turned out that there was money left over? There might not have been any money left over. There might not have been, but unfortunately, the way the court approved the terms of the settlement agreement, no, it never would have come back before the court for a determination either as to the identity of the Cypre or the distribution to the Cypre. That was not a term of the settlement agreement. So frankly, the fact that they came back and fixed that later with the stipulation after all the briefing was done on the sanctions motion, to me, shows there was in fact merit to that concern because, of course, the court must oversee the Cypre distribution and the class, the absent class members must have a chance to address it. Thank you, Mr. Furman. I reserve my time. Thank you. No time for rebuttal. Ms. Gilmour. Good morning, Your Honor. May it please the Court. The settlement achieved in this case has been extraordinary. The $3 billion settlement is the largest settlement achieved in the past 10 years in securities class actions. Mr. Furman brought before the district court a kitchen sink of meritless objections. As Judge Rekha found, none of them had the slightest merit. For example, Mr. Furman objected that the plan of allocation in the settlement did not include, that the notice to the class did not include the plan of allocation. That was completely false. Had Mr. Furman read the notice to the class, it would have found that the plan of allocation was contained there, and it spent 15 pages. So it's hard to see how Mr. Furman could have raised that argument without actually reading the document. Another completely meritless argument that Mr. Furman brought was with respect to the compensatory awards brought here in the case by the class representatives. As Judge Rekha observed, and I want to read from his ruling, each representative had provided sworn statements detailing the work performed, the people who performed it, and the time expended. The representatives also calculated estimated hourly rates. Again, there was no merit in Mr. Furman's argument that there was no such information provided. What is the amount of the attorney's fees in this case? The amount that we put forward to respond to his objections was $20,000, and Mr. and Judge Rekha actually reduced that amount. I mean the amount of the attorney's fees for class counsel. They were 6% of the settlement, so about $170 million. 170? 170. 170. 6% of the settlement. One important thing I think is worth noticing here is that Mr. Furman is a professional objector. Judge Rekha directed Mr. Furman to provide disclosure with respect to his other actions in other settlements. That disclosure showed that Mr. Furman in the past has objected to class action settlements. Isn't there a role for objectors in class actions, and an important one? Because while you're plausibly saying that this was a legitimate class action and that there were real losses and that people are actually going to get real money as a result, many class actions are abusive. The members of the class get a car wash, and the lawyer gets a hockey team. So there's a role for objectors. Isn't there a concern that if you impose sanctions on an objector for objecting, resenting the fact that the person has objected in other cases, that you're going to inhibit a necessary function for the regulation of class actions? That is certainly a very legitimate concern that Judge Rekha observed in this case. This is not the type of concern, did not deal with the type of concern and meritless arguments that usually should be put forth by objectors. There was another objector against whom we did request sanctions, and Judge Rekha refused to grant them. So he was very careful in exerting his power, and he understood the good and the bad that Were there any objectors against him that did not seek sanctions? The other objection I think Judge Holt presided over that appeal was with respect to whether or not there was an inter-class action conflict with respect to representation of a bondholder versus holders of shares of equities in the bond. And there was no objection to that objection. There was no effort to sanction that objector. That came on up for appeal, right? Right. Correct. That's correct, because Judge Rekha refused to sanction that objector, because he found that there was some merit in that objection. Mr. Furman also claims that there is no notice that he received. He said he refused. Did you ask for sanctions? Yes, we did. We did, Your Honor. Any situation similar in this case in which he didn't ask for sanctions? No. Those were just the two objectors that we moved. They were originalistic subjectors. We only moved them to two, and Judge Rekha granted the sanctions motion to Mr. Furman  Mr. Furman did have notice of the court's—the court may issue sanctions under its inherent power. It's on page 10 of our opening brief. I know that it was in a footnote, but judges use footnotes all the time, and litigants are expected to read them. It sounds like Mr. Furman hasn't—you know, if he hasn't read other documents, perhaps he hasn't read the footnote, but certainly if you were faced with a motion for sanctions, you would expect to be reading the footnote. In any event, even assuming that he did not receive such notice for the court's—with respect to the court's inherent power, which we presume he did, the court was well within its bounds to sanction Mr. Furman under Section 1927. Mr. Furman vexatiously multiplied the proceedings by raising numerous arguments that were brought in that phase, as the example, for instance, that I gave you. At the time, we asked Mr. Furman— If you're not going to pay the sanctions, why do you care? I'm sorry? If you're not going to pay the sanctions, why do you care? We— Why are you spending good lawyer time if you're not going to pay anything? I mean, is this out of a duty to Judge Rakoff, the courts? Your Honor, the only reason why we paid Mr. Furman is in exchange for— No, no, but my question is, having paid him, why pursue this further? Why not just— I think if he's attacking the integrity of the district court's decision and the integrity of the settlement, he wants his arguments to be based on— You're doing it in a sense of duty to the district court. Yes. Unless the court has further questions, I think we stand on our briefing. Thank you. Excuse me. Thank you, Ms. Gilmore. Mr. Furman? Yes, counsel does read an entire brief when it is going to ask for sanctions against him, including the footnotes. Counsel also expects there to be explicit notice of the authority for the sanctioning power and of the conduct as this court requires. Ms. Gilmore suggests that I multiply the proceeding by filing one objection and filing one appeal. Under Section 1927, filing one document is rarely seen. If ever, I haven't seen one that says it is a multiplication of the proceeding. I've seen holdings that say filing one complaint is not a multiplication of the proceeding. And under Section 1927, I have not seen any authority that says a district court may sanction for a pending appeal. The only time this court has even considered whether a district court can sanction under 1927 for an appeal is when the appeal has been dismissed. We explained in the briefs why we raised the other objections that we raised in terms of allocation and compensatory issues. There was a lack of specificity. And, Your Honors, I am not a professional objector. I am simply an attorney representing my clients. I have some experience with objections. The district court had zero evidence from which it could determine that I had made meritless objections at any point in time prior to its own conclusions in this case. I, of course, dispute that finding, but it is what it is. No other judge has made that statement prior to this date, and even if it had... Were there other judges in other cases that dismissed your objections, objections you made on behalf of your clients as unfounded? No. They've been overruled. I certainly have never had a judge in any other objection say, that's meritless, you're a bad guy, anything like that. We'll stick with meritless, that's the question. We'll stick with meritless, not bad guy. I'm quite serious. I mean, the question is, have they ever said... I think the question was, have they ever said, no, there's nothing to this? Not specifically, no. I have not had that experience. Frankly, I've not done... I've done, I think, about ten objections over a 15-odd year career. Sometimes you win, sometimes you lose. Sometimes your client says, look, I want to settle, so you settle. Frankly, I'm obligated to do that. I cannot tell my client, I'm not going to settle the case that you want to settle. Sometimes that happens, and sometimes we take it through before a panel of distinguished jurists like yourselves, and they tell us, you know what, that's not good enough, we approve the settlement. And that's how that goes. But class actions are tricky. It's important that the objectors have the opportunity to go in and take care of it. And in this very case, you're seeing an example of objector advocacy that's been chilled because we withdrew this objection with my client's consent after the judge said that he was issuing sanctions. I think that's unfortunate. I think it's tragic. I thank the Court very much. Thank you. Thank you both. We'll reserve decision in this case.